### FAULKNER v. OTTO. (No. 1754.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 16, 1921. Rehearing Denied May 4, 1921.)

1. **Vendor and purchaser** ⊜⇒58—**Contract held to make procuring federal loan a "condition precedent" to purchase.**

A written stipulation on a contract for the sale of land that if the federal loan was not secured neither party was bound by the contract, made the securing of the loan from the Federal Land Bank a "condition precedent," which is defined to be a condition which is to be performed or fulfilled before the obligation of the contract commences.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Condition Precedent.]

2. **Vendor and purchaser** ⊜⇒95(1)—**Vendor held to have waived right to forfeit for purchaser's failure to build on land.**

Where a contract for the sale of land required the purchaser to build a house thereon by a stated date, but the contract was subject to the procuring of a federal farm loan as a condition precedent to its obligations, the act of the vendor in refusing to permit the loan, if secured, to be applied on the first two notes, and instead requiring it to be applied on the last two notes which prevented the securing of the loan, waived his right to forfeit the earnest money deposited by the purchaser for the latter's failure to build on the land within the time stipulated.

3. **Payment** ⊜⇒38(1)—**Contract held to permit purchaser to apply proceeds of loan to any of the purchase-money notes.**

As a matter of law, the purchaser of land could apply the proceeds of a federal loan, the procuring of which was a condition precedent to the obligations of the contract, to the payment of any of the purchase-money notes he might choose, where the contract did not in express terms provide which note should be paid.

4. **Vendor and purchaser** ⊜⇒341(2)—**Petition to recover earnest money held sufficient.**

A petition for the recovery of earnest money paid on a contract for the purchase of land, which alleged that the securing of a federal loan was a condition precedent to the obligations under the contract, and that such loan was not procured because the vendor, in violation of his agreement, required the proceeds to be applied on the payment of the last two of the purchase-money notes, was sufficient to support a judgment on directed verdict for the earnest money paid.

5. **Appeal and error** ⊜⇒927(6)—**Judgment presumed to be based on valid allegations supported by evidence.**

Where the record does not show that the direction of the verdict was based upon allegations in the trial amendment to the petition, and the original petition was sufficient to sustain the judgment and was supported by evidence which established its allegations beyond room for reasonable difference as to the facts, the appellate court will presume the directed verdict was based on the original petition, and not the trial amendment.

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Suit by C. S. Otto against L. M. Faulkner. Judgment for plaintiff on directed verdict, and defendant appeals. Affirmed.

Williams & Martin, of Plainview, for appellant.

Jordan & Zimmermann, of Tulia, and Geo. L. Mayfield, of Plainview, for appellee.

HALL, J. October 3, 1919, appellant and appellee entered into a written contract, whereby appellant agreed to convey to appellee a certain half section of land in Swisher county, for a consideration of $8,000, $1,000 of which was deposited in the bank at the time of the execution of the contract. A printed form was used which contained, among other provisions ordinarily contained in such contracts, the following:

"It is agreed that party of the second part (appellee) shall go on the land at once and build a residence, and have possession of all land by January 1st." "It is agreed that all papers shall remain in the First National Bank

until the house has been completed, which second party shall build on said land."

"In the event second party shall fail to comply with the terms of this agreement within the time specified, then the earnest money put up shall be declared forfeited."

In the negotiations preceding the execution of the contract, appellee had made known his inability to purchase the land unless he could secure a loan from the Federal Land Bank of enough money to satisfy one vendor's lien note due Mrs. Newton, in the sum of $2,000, and the first two annual payments due appellants. The contract bound appellee to pay the Newton note, and for the balance due he. was to execute five notes in the sum of $1,000 each, due one, two, three, four, and five years after date, respectively. Before the contract was signed appellee insisted that it should contain a stipulation making that part of the agreement plain, and the following was written upon the head of the blank:

"It is agreed by all parties that if the federal loan is not secured, or for any reason the government does not make the loan, then in this case neither party is bound by| this contract."

The loan was not secured, and in the latter part of the month of December appellant claimed the forfeit money which was paid to him by the bank, whereupon, appellee filed this suit to recover the $1,000 and damages. In his petition he alleges in part as follows:

"That it was agreed by and between plaintiff and defendant, L. M. Faulkner, acting by and through his agent, J. J. Lash, that the federal loan, meaning a loan by the Federal Land Bank of Houston, Tex., should be procured on said land, and it was agreed between plaintiff and . said defendant, acting by and through his said agent Lash, that the proceeds of such loan could be used in taking up the Mrs. S. L. Newton indebtedness and notes Nos. 1 and 2, mentioned in said contract, due one and two years after date' thereof; that such agreement was orally in addition to said contract and that the provision 'on the top of said contract that 'It is agreed that if the federal loan is not secured or for any reason the government does not make the loan, then in this case neither party is bound by this contract,' was placed on said contract in furtherance of said agreement to procure said loan and take up said notes 1 and 2, above described; that plaintiff was ready, willing, and able to comply with his part of said contract and such oral agreement, and made application for said loan, and the same was approved' and would have been made, and that plaintiff offered to perform the same to defendant, within the ‚time limits of said contract, but that the said defendant, Faulkner, willfully failed and refused to permit the plaintiff to take up said first two notes, Nos. 1 and 2, with said proceeds of said federal loan, but insisted that plaintiff was to take up notes Nos. 4 and 5 instead, and thereby breached said contract and refused to let plaintiff take up said first notes, and refused to transfer them to the Federal Land Bank of Houston, Texas, in accordance with said agreement. That said Federal Land Bank has since suspended operations, and said loan cannot now be procured; that plaintiff did not procure said loan by reason of the refusal of the said Faulkner to comply with said agreement and his refusal to permit plaintiff to take up said notes Nos. 1 and 2;. and, that, had defendant not so refused to let plaintiff take up said first notes, he would have complied with the terms thereof, in full."

[1] The stipulation with reference to securing the loan from the Federal Land Bank is clearly a condition, precedent. It expressly provides that if said loan is not secured neither party is bound by the contract. The effect of this stipulation is to postpone performance by both parties of any of the obligations resting upon them respectively until the loan is secured. Precedent conditions are defined to be those which are to be performed or fulfilled before the obligation of the contract commenced. Bouvier's Law Dictionary, 582; 6 R. C. L., Contracts, pars. 290, 325; 13 C. J. 564, 565; Simkins on Contracts and Sales (3d Ed.), pp. 446, 846; Pryor v. Jolly, 91 Tex. 90, 40 S. W. 959; National Bank v. Dancey, 40 S. W. 551; Nevins v. Thomas, 80 Tex. 596, 16 S. W. 332; Callison v. Gray, 25 Tex. 84.

[2] It appears that appellee applied for the loan, and that his application was approved by the Federal Land Bank to the extent of near $3,900, and it further appears without serious conflict that he was willing to execute the papers necessary to secure the loan and to consummate the deal, provided appellant would permit him to apply the money received from the Federal Bank to the payment of the note due Mrs. Newton and notes Nos. 1 and 2. Appellant, however, insisted that the money so received should be applied to notes numbered 4 and 5, and which matured respectively four and five years after date. The statement of facts does not show that appellant made any protest because of the failure of appellee to begin the construction of a house upon the land at once. His first objection upon this ground was made about two and one-half months after the contract was executed, and about the time he decided to claim the forfeit money. Appellee had prepared bills of lumber for the house which he proposed to construct upon the land under the contract; had submitted his bill to several lumber dealers; but had not purchased the lumber at the time appellant declared the forfeiture. By common consent both parties seemed to be waiting for the loan to go through. This is, we think, a practical construction, which binds the parties, and appellant cannot lawfully base his declaration of forfeiture upon a breach of a term of the contract which he

had apparently waived, even though the securing of the loan was not a condition precedent.

[3] As a matter of law, appellee had the right, when he paid off the notes, to apply the payment, if he saw fit to do so, to the extinguishment of notes Nos. 1 and 2. This right was an implied term of the contract, which, it seems, failed in express terms to give him that authority. Upon appellant's refusal to permit appellee to apply the payments in this way, appellee declined to execute the notes and lien necessary to secure the loan. We think he was warranted in declining to proceed further in the matter. After the testimony was introduced the court directed a verdict in appellee's favor to the extent of the $1,000 forfeit money, denying him any recovery upon his claim for damages for breach of the contract.

Appellant urges a number of assignments, in which with their propositions, it is insisted: First, that the $1,000 having been paid as part of the purchase money, appellee was not entitled to recover it without showing that he had complied with his obligations under the contract, or that he was able and willing to perform his obligations under the contract by building the house and moving on the land prior to January 1, 1920. If we are correct in our holding that the stipulation contained in the contract with reference to the loan is a condition precedent, these assignments must be overruled, since until the loan was secured neither party was bound by any of the obligations contained in the contract, and the refusal of appellant to permit appellee to apply the money to be secured by the loan in accordance with his wishes relieved appellee of the duty of securing the loan.

[4] It appears that, after the evidence was introduced, appellee, by writing upon his original petition what he terms a trial amendment, alleged in substance that if he is mistaken as to the facts before alleged, and is not entitled to the relief asked then in the alternative, he alleges that while the parties signed the written contract there was no meeting of their minds as to the terms of the federal loan, and how the proceeds thereof should be applied; that by reason thereof the contract, as a whole, is conflicting, vague, and indefinite, and not binding upon appellee. Appellant made no motion to strike out this part of the pleading, and urged no exceptions to it, but insists under several assignments that these allegations, when construed with the pleading as originally filed, made the whole petition inconsistent, contradictory, and repugnant. The allegation quoted above from the pleading as originally filed is sufficient to support the verdict and judgment.

[5] It does not appear from the record that the court's action in directing the verdict was based upon the allegation of the trial amendment. In the absence of such showing we must presume that the court peremptorily instructed the jury because it appeared from the evidence that the loan was not secured through the fault of appellant. Appellee testified that it was understood that he was to get a loan from the Federal Land Bank to take up the first notes so he could go on the place and improve it, and make a crop or two, and in the event of a drouth the first year he would not lose the place. He further testified:

"I would not have bought the land at that time—would not have made this contract unless I could have gotten the federal loan. The contract was written out and given me to sign, and I read it over and I got down there to where it says, 'One note to be paid in one year; No. 2 in two years; 3 in three years; 4 in four years, etc.;' and I says, 'I can't sign this; if I do I will be buying it right straight out—paying it right straight out without a federal loan.' He (Lash) says, 'All right,' and he put the federal loan business in at the top. Mr. Faulkner was present when that occurred, and it was perfectly agreeable with him, and he said if the federal loan was not procured he did not want to go ahead. . I would not have gone on that land and built that house unless I knew I could get that loan."

The witness Lash, who was Faulkner's agent, testified in part:

"Our talk was that the federal loan was to take up the first notes; that is what I thought customary; I think I outlined that to Mr. Otto. I don't think Mr. Faulkner and I discussed that; I don't remember that we did; I don't remember that Mr. Faulkner was present when we were talking about it, Mr. Otto and I. As to whether that matter was brought up in Mr. Faulkner's presence when it was put on the contract—whether there was something said about it then, when it was written on the top of the contract, I don't think I wrote the contract. I think I sat by while Mr. Moore wrote out the contract, though I am not sure about that, and when we got the contract written Mr. Otto says, 'If I don't get that federal loan—I want it put in here that, if I don't get the federal loan, I don't want the land.' So there was not anything to do, and he didn't want to sign it that way without that, and we wrote that across the top, as well as I remember. I think Mr. Faulkner was present there then; I believe Mr. Faulkner was present when we were writing on the contract."

Appellant Faulkner testified:

"I signed the contract myself. I was there when it was being written up, and saw what was put in it; knew what was in the contract, and I and Mr. Otto both signed it in person there. As to whether or not anything was said there to me by Mr. Lash or Mr. Otto as to which of the notes were to be taken up by the federal loan, the first idea I had about anybody not taking up the last note was when they refused to sign the transfer and the deed

230 S.W.—29

of trust to the Land Bank. It never was mentioned to me before. The understanding was that he was to take up the last notes; the federal loan was jumped up right at the last, the wind-up of the business. As to whether or not I had ever heard of the federal loan being made until after the contract was written, will say, Yes. They had discussed it a little; not directly with me about it; there was nothing definite about it in any way, at least; in other words, it was put in there when we were ready to sign it up or had signed it—I don't remember which—but it had been talked before that, however, between them."

It appears that the First National Bank of Plainview wired appellee on December 20th that Faulkner had declared the contract forfeited, and demanded the earnest money; that after the receipt of the telegram appellee went to see Mr. Lash, but he was at that time in California. He then found Mr. Faulkner in the bank. He testified:

"I told him I wanted to talk to him about it. He said, 'Well, let's go into this room here and talk.' I said, 'Mr. Faulkner, why did you shift these notes from the first to the last, and have the federal loan to take up those?' He says, 'Well, I didn't want to wait for years to get my money out of the second lien notes.' I told him that was not the understanding with Mr. Lash, and he said that there was nothing said about it. I asked him if he would go ahead with the deal, and I would sign it up because I had sold my house in Fort Worth and had my things packed, and wanted to make a crop. He says, 'In the first place, I sold you the land too cheap, but,' he says, 'if you will give me $400 we will go ahead with the deal.' I told him I would not do it. I asked him if he would give me my $1,000 back, and call it off, and he said he would not."

We think there is no room under this testimony for reasonable minds to differ in regard to the material facts. A careful reading of the statement of facts shows that appellee was more than willing to consummate the deal, provided appellant would accept the proceeds of the loan in payment of the first two notes. Faulkner's refusal to do so places him in default. It may be true, as insisted by appellant, that appellee could not, under the agreement, get possession of the papers placed in escrow in the bank until he had secured the loan from the Federal Land Bank, but he was not required to do this after appellant's refusal to accept payment of the first two notes. It is unnecessary to discuss the assignments in detail. The propositions of law urged by appellant are, in the main, correct, and would be applicable if the condition precedent had been complied with, but under the record they are not applicable, and the court did not err in directing a verdict for appellee.

The judgment is affirmed.